[Cite as *State v. Shaffer*, 2013-Ohio-3581.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY


STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO. 11-13-02

    v.

KIMBERLY JO SHAFFER,               O P I N I O N

    DEFENDANT-APPELLANT.


**Appeal from Paulding County Court**
**Trial Court No. 12-TRC-291 A-B**

**Judgment Reversed and Cause Remanded**

**Date of Decision:  August 19, 2013**


APPEARANCES:

    *Peter R. Seibel* **for Appellant**

    *Joseph R. Burkard and Matthew A. Miller* **for Appellee**

**SHAW, J.**

{¶1} Defendant-appellant, Kimberly Jo Shaffer ("Shaffer"), appeals the December 17, 2012, judgment of the Paulding County Court finding her guilty of reckless operation, in violation of R.C. 4511.20(B), a misdemeanor of the third degree, and failure to drive within the marked lanes, in violation of R.C. 4511.33(A)(1), a minor misdemeanor, following a plea of no contest to both offenses. The trial court imposed a three-day jail sentence and a fine of $375 for the reckless operation conviction and a fine of $50 for her failure to drive within the marked lanes.

{¶2} On March 10, 2012, at approximately 3:00 a.m., Trooper Joe Sisco was traveling behind Shaffer on State Route 66 in Paulding County when he observed the right side tires of Shaffer's vehicle drive onto the white line marker one time for about three seconds. Trooper Sisco proceeded to stop Shaffer for failure to drive within the marked lines, also referred to as a "marked lanes violation."

{¶3} Upon speaking with Shaffer, Trooper Sisco smelled a strong odor of alcoholic beverage emitting from the vehicle. He also observed Shaffer's eyes were red and glassy and that her speech was slurred. Shaffer initially denied consuming any alcoholic beverage, but later admitted to consuming alcohol around 3:00 p.m. earlier that afternoon.

**{¶4}** Trooper Sisco asked Shaffer to perform a series of field sobriety tests and Shaffer completed the Horizontal Gaze Nystagmus ("HGN"). Trooper Sisco reported observing six out of six clues indicating impairment. Shaffer declined to perform any subsequent field sobriety tests. Trooper Sisco also asked Shaffer to submit to a portable breath test, which she refused.

**{¶5}** Trooper Sisco placed Shaffer under arrest and charged her with operating a vehicle while under the influence or "OVI," in violation of R.C. 4511.19(A)(2). Trooper Sisco also cited Shaffer for failure to drive within the marked lines, in violation of R.C. 4511.33(A)(1). In a written report filed with the citation, Trooper Sisco stated that he "observed the vehicles [sic] right side tires cross over the white lane marker line. After observing the violation, [he] activated the overhead emergency lights to conduct a traffic stop." (Doc. No. 1).

**{¶6}** Shaffer appeared in open court and entered pleas of not guilty. On May 9, 2012, Shaffer filed a motion to suppress all evidence against her on the ground that Trooper Sisco lacked probable cause and/or reasonable articulable suspicion justifying the stop of her vehicle. Specifically, Shaffer argued that she did not commit a marked lanes violation, which was the sole reason Trooper Sisco initiated the stop.

**{¶7}** On May 31, 2012, the trial court held a suppression hearing on the matter. Trooper Sisco was the only witness to testify and provided the following testimony.

**Prosecutor: And Trooper Sisco what was the reason for your interaction with Miss Shaffer on that night?**

**Trooper Sisco: Ah, I was traveling southbound on State Route 66 near mile post 12 in Paulding County, um she was traveling southbound in front of me, while behind the vehicle I noticed that the right side tires drove across the white lane marker and I stopped her for that violation.**

**Prosecutor: Ok, what exactly is the violation you're referring to?**

**Trooper Sisco: Ah, it would be a marked lanes violation.**

**Prosecutor: Ok, and that's because she bumped the white line?**

**Trooper Sisco: Ah, her tires drove onto it and her vehicle was across it.**

(Tr. at 5-6).

{¶8} In addition to Trooper Sisco's testimony, the prosecution admitted as evidence the recording from Trooper Sisco's dashboard camera. On the stand, Trooper Sisco narrated the sequence of events depicted on the recording and identified what he observed as the marked lanes violation.

{¶9} On cross-examination, Trooper Sisco provided the following testimony regarding his reason for stopping Shaffer's vehicle.

**Defense Counsel: Trooper, is it my understanding that you're saying that she touched the fog line one time? Is that correct?**

**Trooper Sisco: She drove across it the one time, yes sir.**

**Defense Counsel: Ok, now what I thought I heard you say was her tires were on the fog line, but her vehicle was across the line?**

-4-

**Trooper Sisco:  That would be correct.**

**Defense Counsel:  Ok, so her tires were not actually on the other side of the fog line but the out [sic] overhang on her car was on the other side?**

**Trooper Sisco:  I would say that the right fender and the outside mirror would be across the white line.**

(Tr. at 10).

**{¶10}** Trooper Sisco further testified that Shaffer's failure to drive within the marked lanes was the only traffic offense he observed.

**{¶11}** On August 6, 2012, the trial court issued a judgment entry overruling Shaffer's motion to suppress.  However, in this judgment entry the trial court failed to address or determine whether Trooper Sisco had a legitimate basis to initiate the traffic stop, which was the only ground for suppression asserted in Shaffer's motion.  Instead, the trial court proceeded to only address whether Trooper Sisco had reasonable, articulable suspicion and/or probable cause to believe that Shaffer was driving while under the influence.[1]

**{¶12}** Shaffer subsequently filed a "Request for Judgment on Motion," requesting the trial court make a legal determination regarding the validity of Trooper Sisco's initial stop of Shaffer.

---

[1] We also note that in making this determination, the trial court improperly considered Shaffer's decision to decline Trooper Sisco's request to perform the voluntary field sobriety tests as an indicia of impairment, rather than viewing her decision as a legitimate exercise of her right against self-incrimination. However, we do not find this error to be reversible because there were other indications of impairment in the record, and no error was assigned to this specific probable cause determination.

{¶13} On September 12, 2012, the trial court issued a judgment entry finding the stop to be constitutionally valid and denying Shaffer's "Request for Judgment on Motion." Specifically, the trial court concluded that "the officer had reasonable and articulable suspicion that the Defendant violated R.C. 4511.33 because the officer observed the Defendant's tires touch[] the fog line and because it was 3:00 a.m. on a Saturday morning." (Doc. No. 17 at 2).

{¶14} Shaffer entered pleas of no contest to an amended charge of reckless operation, a misdemeanor of the third degree, and the failure to drive within the marked lanes charge.[2] The trial court sentenced Shaffer to three days in jail and ordered her to pay a fine of $425 plus court costs. The trial court stayed the sentence pending appeal.

{¶15} Shaffer now appeals asserting the following assignment of error.

**THE TRIAL COURT ERRED WHEN IT FAILED TO SUPPRESS ALL EVIDENCE OBTAINED BY THE STATE TROOPER AND WHEN IT ALSO REFUSED TO VACATE THE ALS, AFTER THE COURT DETERMINED THAT THE APPELLANT'S TIRES "ONLY TOUCHED" THE FOG LINE ONE TIME, DID NOT GO OUTSIDE THE FOG LINE, THAT THERE WAS NOT A VIOLATION OF LAW, FOUND NO OTHER ARTICULABLE FACTS TO JUSTIFY THE INITIAL DETENTION, BUT NEVERTHELESS FOUND THE CONTINUED DETENTION LEGAL AND FOUND ADMISSIBLE ALL EVIDENCE SUBSEQUNETLY OBTAINED AFTER THE INITIAL UNWARRANTED DETENTION.**

---

[2] The reckless operation charge to which Shaffer pleaded no contest was pursuant to R.C. 4511.20(B), which sets forth an elevated misdemeanor offense for the third offense within one year. *See* R.C. 4511.20(B)

{¶16} In her sole assignment of error, Shaffer argues that the trial court erred in overruling her motion to suppress. Specifically, Shaffer asserts that the trial court erred when it determined that Trooper Sisco had a reasonable, articulable suspicion to believe she committed a marked lanes violation when her vehicle's tires touched, but did not completely cross, the white fog line. Shaffer claims that Trooper Sisco's testimony that a vehicle's tires touched the white fog line on a single occasion, causing the right fender of the vehicle to extend slightly over the line for three seconds, without any other evidence in the record addressing either the practicability or safety of the circumstances, is not sufficient to establish reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1). We agree.

{¶17} In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. *State v. Burnside*, 100 St.3d 152, 2003-Ohio-5372 ¶ 8. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71 2006-Ohio-3665, ¶ 100. The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. *Burnside* at ¶ 8.

{¶18} At the outset, we note that the only issue before us is whether Trooper Sisco had a reasonable, articulable suspicion to believe Shaffer committed

a marked lanes violation in order to legally effectuate the traffic stop.[3]   The

Supreme Court of Ohio has defined "reasonable articulable suspicion" as "specific

and articulable facts which, taken together with rational inferences from those

facts, reasonably warrant the intrusion [upon an individual's freedom of

movement]."  *State v. Bobo,* 37 Ohio St.3d 177, 178 (1988), quoting *Terry v.*

*Ohio,* 392 U.S. 1, 21–22 (1968).   "The 'reasonable and articulable suspicion'

analysis is based on the *collection* of factors, not on the individual factors

themselves."  *State v. Mays*, 119 Ohio St.3d 406, 2008–Ohio–4539, ¶ 12, quoting

*State v. Bactchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 11.  (Emphasis sic).

{¶19} At the suppression hearing, Trooper Sisco testified that he stopped

Shaffer based on his observation that she had committed a marked lanes violation.

Trooper Sisco described the conduct comprising the violation as Shaffer's right

side tires driving onto the white fog line one time causing the right side of

Shaffer's vehicle to cross the same line for approximately three seconds.

Specifically, Trooper Sisco recalled observing the right fender and the outside

mirror cross the white line.

{¶20} A marked lanes violation is governed by R.C. 4511.33(A)(1), which

states the following:

> **(A)  Whenever any roadway has been divided into two or more**
> **clearly marked lanes for traffic, or wherever within municipal**
> **corporations  traffic  is  lawfully  moving  in  two  or  more**

---

[3] Despite the manner in which the appellant chose to phrase the assignment of error, the only issue raised at the suppression hearing and the only issue argued in her brief is the legitimacy of the traffic stop.

**substantially continuous lines in the same direction, the following rules apply:**

**(1)  A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.**

{¶21} In drafting the foregoing subsection (A)(1), the legislature specifically chose the phase "as nearly as is practicable" in describing a motorist's duty to drive within a single lane or line of traffic.  We believe the language "as nearly as is practicable" inherently contemplates *some* inevitable and incidental touching of the lane lines by a motorist's vehicle during routine and lawful driving, without the vehicle being considered to have left the lane of travel so as to constitute a marked lanes violation as proscribed by R.C. 4511.33(A)(1), such as to avoid debris, obstructions or imperfections in the roadway.

{¶22} In the alternative, the same subsection notably does not proscribe all movement from the marked lane but expressly links any movement from the marked lane directly with the element of safety—specifically permitting movement from the lane only where "the driver has first ascertained that such movement can be made with safety."

{¶23} Accordingly it is our conclusion that consideration of the statutory factors of *practicability* and *safety* is integral to any determination of a violation of R.C. 4511.33(A)(1).

{¶24} We would be inclined to agree that a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1) could be established by almost any evidence in the record addressing *either* the practicability *or* the safety of the driving circumstances. This conclusion stems in part from the fact that a sudden deviation from the lane of travel, where there is nothing in the surrounding circumstances to indicate why it was not practicable for the driver to remain within the lane, could in itself raise a legitimate safety concern sufficient to constitute a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1) in the right case.

{¶25} At the same time, we also recognize that there could always exist something in the surrounding conditions or circumstances that raises a safety concern regarding the driver's deviation from the lane that completely obviates any need to address the issue of the driver's practicability in maintaining the lane of travel, all of which could likewise independently constitute a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1).

{¶26} However, the fact remains that in this case there is *no* evidence in the record from which any legitimate inference can be drawn regarding either one of these requisite statutory elements. As noted earlier, the only evidence presented to the trial court was Trooper Sisco's testimony that there was a *one-time touching* of Shaffer's tires on the white fog line, causing a slight extension of the right fender and mirror of the vehicle over the line *for approximately three seconds*. There

was no other evidence concerning the circumstances surrounding Shaffer's failure to maintain her lane of travel.

{¶27} More specifically, there was nothing in Trooper Sisco's testimony as to the traffic, weather or road conditions, or anything else in the record to indicate *either* 1) that there was no apparent reason why it was not practicable for Shaffer to remain within the lane, *or* 2) that in this instance, Shaffer's single and brief movement from the lane otherwise presented any apparent issue of safety.

Accordingly without some additional evidence in the record regarding the surrounding circumstances, traffic and road conditions going to the express statutory language regarding either *practicability* or *safety*, we cannot conclude that the act of Shaffer driving onto the white fog line one time for a matter of three seconds is alone sufficient to establish the requisite reasonable and articulable suspicion to stop Shaffer for a violation of R.C. 4511.33(A)(1).

{¶28} We note that the trial court appeared to rely upon the fact that the incident occurred at 3:00 a.m. as additional evidence of reasonable, articulable suspicion to make the stop. However, we believe the trial court was once again misdirecting its focus somewhat to the secondary OVI charge instead of the marked lanes violation. While the time of day or night may in some cases constitute one factor among many others for the court to consider in determining reasonable, articulable suspicion of an OVI violation, the stop in this case was based upon a marked lanes violation, not a suspicion of an OVI violation. We do

not believe the time of day alone is sufficient to raise any legitimate inference one way or the other regarding the practicability or safety factors necessary for the marked lanes violation stop in this case.

**{¶29}** We wish to emphasize that in reaching our decision we specifically decline to adopt and do not endorse the rationale of the Eleventh District in *Wickliffe v. Petway*, 11th Dist. Nos. 2011-L-101, 2011-L-102, 2012-Ohio-2439, or the decisions in some other appellate districts which seem to employ a so-called "tire rule" approach to marked lanes cases. These decisions appear to be based solely upon whether a vehicle's tires merely touched or completely crossed the lane line and have found no statutory violation as a matter of law via judicial construction, unless the tires have been observed to actually cross over the line. On the contrary, our decision does not rule out the possibility that in the right context of conditions and circumstances, the driving observed in this case could be sufficient to establish grounds for a marked lanes violation. Nor have we established any rule of law that would require every case to contain additional evidence of erratic or unsafe driving beyond the single crossing of the lane marker presented in this case. *See*, *State v. Mays*, 119 Ohio St. 3d 406, 2008-Ohio-4539. In sum, we simply believe our decision is more consistent with the specific statutory language of R.C. 4511.33(A)(1), which among other things, refers to the movement and location of vehicles, not tires.

{¶30} Based on the particular facts of this case and the foregoing analysis, we conclude the trial court erred in determining that Trooper Sisco had a reasonable, articulable suspicion to believe Shaffer violated R.C. 4511.33(A)(1). Therefore, we find that the trial court erred in overruling Shaffer's motion to suppress on this basis. Accordingly, the assignment of error is sustained and the judgment and sentence of the Paulding County Court is reversed and the cause is remanded for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**