[Cite as *State v. Ellis*, 2018-Ohio-898.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO. 1-17-37

      v.

DARIUS ELLIS,                        O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Lima Municipal Court
Trial Court No. 17TRC00529

Judgment Affirmed

Date of Decision: March 12, 2018

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *John R. Payne* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Darius L. Ellis ("Ellis"), brings this appeal from the August 28, 2017, judgment of the Lima Municipal Court sentencing Ellis to 180 days in jail, with 160 suspended, after Ellis pled no contest to, and was found guilty of, OVI in violation of R.C. 4511.19(A)(2)/(a)&(b).  On appeal, Ellis argues that the trial court erred by overruling his suppression motion, that the trial court's "journal entry" did not constitute a final appealable order, and that the trial court improperly delegated authority to the clerk to forfeit Ellis's license in the event of non-payment of fines and costs.

*Relevant Facts and Procedural History*

{¶2} On January 15, 2017, at approximately 1:01 a.m., Ellis was stopped for a Marked Lanes infraction in violation of R.C. 4511.33(A)(1).  As a result of the traffic stop, Ellis was charged with a Marked Lanes violation, an OVI in violation of R.C. 4511.19(A)(1)(a), and an OVI in violation of 4511.19(A)(2)/(a)&(b) for having a prior OVI in the last 20 years and refusing to submit to a BAC analysis. Ellis originally pled not guilty to the charges.

{¶3} On March 9, 2017, Ellis filed a suppression motion arguing that the video of the stop provided by the State showed "at best a very minimal touching of the white dashed line on the left edge of the right-most lane."  (Doc. No. 9).  Ellis

argued that such a "miniscule touching" of the line was insufficient cause to conduct a traffic stop for a Marked Lanes violation pursuant to R.C. 4511.33(A)(1).

{¶4} On June 2, 2017, a hearing was held on Ellis's suppression motion. At the hearing the State presented the testimony of Trooper James Johnson of the Ohio State Highway Patrol. Trooper Johnson testified that he was driving behind Ellis in Lima on St. Rt. 309, also known as Elida Road, when he observed Ellis weaving back and forth within the lane. Trooper Johnson testified that this particular section of St. Rt. 309 had four lanes, with two going east and two going west. Trooper Johnson indicated that Ellis was traveling eastbound in the far right lane.

{¶5} Trooper Johnson testified that he observed Ellis cross over the middle dash line between the two eastbound lanes on two separate occasions. Trooper Johnson testified that after the second incident he initiated a traffic stop.

{¶6} The State introduced video from Trooper Johnson's dash camera into evidence. Trooper Johnson acknowledged that it was difficult to see Ellis actually crossing the line on the dash camera, though Ellis could be seen drifting to the left. Trooper Johnson explained that the dash camera was set further to the right side of the car than his vantage point and he could actually get a better view from the driver's seat to see Ellis drive outside of his lane. On cross-examination, Trooper Johnson conceded that no other vehicles were impacted by Ellis's purported Marked Lanes infraction.

{¶7} At the conclusion of the hearing the trial court determined that the evidence presented supported a traffic stop for a Marked Lanes violation. An entry overruling Ellis's suppression motion was filed that same day. (Doc. No. 10).

{¶8} After his suppression motion was overruled, Ellis pled no contest to OVI in violation of R.C. 4511.19(A)(2)/(a)&(b). In exchange for his plea, the remaining charges against him were dismissed with prejudice. Ellis was found guilty and sentenced to serve 180 days in jail, with 160 days suspended.

{¶9} A "Journal Entry of Conviction and Sentencing" was filed August 28, 2017. It is from this "judgment" that Ellis appeals, asserting the following assignments of error for our review.

**Assignment of Error No. 1**
**The Trial Court erred by denying Mr. Ellis'[s] motion to suppress.**

**Assignment of Error No. 2**
**The Trial Court erred by anticipatorily enabling license forfeiture and registration block to collect unpaid fines and costs.**

**Assignment of Error No. 3**
**The trial Court erred by disposing of this case without the issuance of a final, appealable order.**

{¶10} We elect to address the assignments of error out of the order in which they were raised.[1]

---

[1] In particular, we must address the third assignment of error regarding the purported lack of a final appealable order because if there is no final order, we would lack jurisdiction to consider any of the remaining issues.

*Third Assignment of Error*

{¶11} In Ellis's third assignment of error, he argues that the trial court's "Journal Entry of Conviction and Sentencing" did not constitute a final appealable order. Specifically, Ellis contends that the entry was insufficient because it was labeled "journal" entry rather than "judgment" entry, that it was insufficient because in the caption it was not circled whether the "City of Lima" or the "State of Ohio" was the plaintiff, and that the entry was insufficient because it did not direct the clerk of courts to serve a copy on the defendant.

Relevant Authority

{¶12} Criminal Rule 32(C) specifies what a final entry must contain. It reads:

> **A judgment of conviction shall set forth the fact of conviction and the sentence. Multiple judgments of conviction may be addressed in one judgment entry. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk.**

{¶13} In *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, the Supreme Court of Ohio analyzed Crim.R. 32(C) and its own prior case authority to set the parameters for when a judgment of conviction is a final order subject to appeal under R.C. 2505.02. *Lester* held that an order is final when "it sets forth (1) the fact of the

conviction, (2) the sentence, (3) the judge's signature, and (4) the time stamp indicating the entry upon the journal by the clerk." *Lester* at syllabus.

Analysis

**{¶14}** In this case, all of the requirements of Crim.R. 32(C) and *Lester* are present. The final entry contains the charge, Ellis's plea of no contest, the trial court's finding of guilt, Ellis's sentence, the judge's signature, and a time stamp for entry on the clerk's file. While it is certainly better practice for a trial court to label its final entry as a "judgment entry" rather than a "journal entry" it does not impact the appealability of the order provided it otherwise complies with *Lester* and Crim.R. 32(C). *See also State v. Vernon*, 11th Dist. Lake No. 99-L-006, 2000 WL 522348, *3 (although predating *Lester*, it held "it is not uncommon for an appellate court to be confronted with a trial court filing that is labeled as a journal entry, instead of a judgment entry. Although the latter is certainly the more accurate and preferred designation, the use of the former on a criminal entry does not preclude the entry from having the force and effect of law nor does it mean that the entry is not a final appealable order.").

**{¶15}** Similarly, the other minor issues raised by appellant may require greater attention to detail by the trial court in fashioning its entries, but they do not impact the appealability under *Lester*. This is particularly true given that throughout the proceedings it was clear that the State of Ohio was the plaintiff and the entry

directed Ellis's counsel to be served with a copy of the entry. Therefore, Ellis's third assignment of error is overruled.

*First Assignment of Error*

{¶16} In Ellis's first assignment of error, he argues that the trial court erred by denying his suppression motion. Specifically, he contends that the video provided by the State of the traffic stop showed at best a very minimal, single touching of the white dashed line. Ellis contends that under this Court's decision in *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, Trooper Johnson lacked a reasonable articulable suspicion of a traffic infraction to stop Ellis's vehicle.

Standard of Review

{¶17} "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented. *State v. Johnson,* 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts,* 110 Ohio St.3d 71, 2006–Ohio–

3665, ¶ 100.  The appellate court must then review the application of the law to the facts de novo.  *Burnside* at ¶ 8.

Relevant Authority

**{¶18}** The primary issue before this Court in this case is whether Trooper Johnson had a reasonable articulable suspicion to believe Ellis committed a Marked Lanes violation pursuant to R.C. 4511.33.  The Supreme Court of Ohio has defined "reasonable articulable suspicion" as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement]."  *State v. Bobo,* 37 Ohio St.3d 177, 178 (1988), quoting *Terry v. Ohio,* 392 U.S. 1, 21–22 (1968).  "The 'reasonable and articulable suspicion' analysis is based on the *collection* of factors, not on the individual factors themselves."  (Emphasis sic.)  *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 12, quoting *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 11.  "A traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving."  *Mays* at syllabus.

**{¶19}** In this case Trooper Johnson testified that he stopped Ellis's vehicle for a violation of R.C. 4511.33(A)(1), which reads:

> **(A)  Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more**

**substantially continuous lines in the same direction, the following rules apply:**

**(1)  A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.**

Evidence Presented

{¶20} At the hearing on the suppression motion, the State presented the testimony of Trooper Johnson, and video from his dash camera of the incident. Trooper Johnson testified that he observed Ellis drive outside of his lane on two occasions and then he stopped Ellis for a Marked Lanes violation.  Trooper Johnson testified that there were no obstructions in the roadway that would have caused Ellis to shift or go outside his lane.

{¶21} In viewing the dash camera video, it is evident that Ellis's vehicle drifts to the left side of his lane a significant distance on two occasions, which could corroborate Trooper Johnson's testimony.  Ellis actually crossing the line cannot be seen in the video due to the distance and the angle of the dash camera.  However, Trooper Johnson noted that the dash camera is offset toward the center of his vehicle so he had a better view from the driver's seat of his cruiser.  The trial court found Trooper Johnson's testimony credible and determined that the video supported Trooper Johnson's version of events.

Argument and Analysis

{¶22} On appeal, Ellis contends that the video evidence did not show his vehicle cross outside of his lane. He argues that pursuant to this Court's decision in *State v. Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581, the video and the testimony do not support a finding of a reasonable articulable suspicion to stop a vehicle for a Marked Lanes violation.

{¶23} In *Shaffer*, we were confronted with a situation where a vehicle was stopped after its tire touched the white line for approximately three seconds a single time, and there was no testimony concerning the circumstances of the defendant's failure to stay in the marked lanes, such as any obstructions in the roadway. We found under those specific facts, where there was a single touching of the line and no attendant testimony, there was not a reasonable suspicion to stop the vehicle for a Marked Lanes violation.

{¶24} The facts in *Shaffer* are different than in the case *sub judice*. Here, Trooper Johnson testified that he observed Ellis drift out of his lane on two separate occasions. Trooper Johnson indicated there were no potholes in the road or things that Ellis needed to avoid that could explain his drifting outside of the marked lanes. Thus *Shaffer* would not compel a reversal here.

{¶25} Given that the trial court found Trooper Johnson's testimony credible, and given that the video would at least to some extent corroborate Trooper

Johnson's testimony, though it cannot confirm it, we cannot find that the trial court erred in determining that Trooper Johnson had a reasonable articulable suspicion to stop Ellis for a Marked Lanes violation. Therefore, Ellis's first assignment of error is overruled.

*Second Assignment of Error*

**{¶26}** In his second assignment of error, Ellis argues that the trial court erred by "anticipatorily enabling license forfeiture and registration block to collect unpaid fines and costs." Specifically, Ellis argues that the following line in the trial court's entry was improper: "The clerk shall use license forfeiture and registration block as a means to collect unpaid fines and cost[s]."

**{¶27}** Ellis contends that the trial court's statement to the clerk in its entry was improper because while a trial court *can* declare the forfeiture of a person's license for failure to pay a fine ordered by the court under R.C. 4510.22, the trial court cannot delegate this authority to the clerk. Further, Ellis argues that before there can be any forfeiture, a timeline has to be established for the payment of his fines.

**{¶28}** The State counters by arguing first that the trial court did not actually *order* anything forfeited, making the matter not ripe for appeal as there is no actual order to review. Second, the State argues that the purpose of the language in the trial court's entry is to direct the clerk to utilize collection proceedings and to notify

-11-

a defendant of *possible* future license forfeiture if the defendant fails to make a timely payment arrangement. The State contends that this is supported by the fact that the record contains a later-filed notice from the clerk to Ellis indicating that Ellis should come in to set up a payment plan and that failure to do so *may* result in such things as license forfeiture. (Doc. No. 18).

{¶29} We agree with the State in this matter. Importantly, there is no indication in this case that license forfeiture and a registration block has actually been used as a means to collect fines and costs. Thus it would seem that Ellis wishes this Court to review something that has not actually occurred. As the trial court "failed to enter the judgment ordering the forfeiture as [described] above, this issue is moot and we need not rule upon it." *State v. DeWitt*, 3d Dist. Henry No. 7-13-07, 2014-Ohio-162, ¶ 8. Nevertheless, given the documents in the record it seems that trial court's statement appears to be more of a notification to the clerk, as suggested by the State. To any extent the trial court would be delegating its authority to declare license forfeiture to the clerk without the trial court's involvement, this would be erroneous. But as there is no actual forfeiture here, there is nothing to review. Therefore, Ellis's second assignment of error is overruled.

*Conclusion*

{¶30} For the foregoing reasons, Ellis's assignments of error are overruled and the judgment of the Lima Municipal Court is affirmed.

***Judgment Affirmed***

**ZIMMERMAN and PRESTON, J.J., concur.**

**/jlr**