[Cite as *State v. Yost*, 2018-Ohio-2873.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                      CASE NO. 13-18-03

    v.

JAY C. YOST,                               **O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Tiffin-Fostoria Municipal Court
Trial Court No. TRC 1700750

Judgment Affirmed

Date of Decision: July 23, 2018

APPEARANCES:

    *Kurt A. Dauterman* for Appellant

    *Charles R. Hall, Jr.* for Appellee

**SHAW, J.**

{¶1} Defendant-Appellant, Jay Yost, appeals the December 4, 2017 judgment of the Tiffin-Fostoria Municipal Court finding him guilty of OVI, after he entered a plea of no contest, and sentencing him to ninety days in jail, all suspended upon his compliance with the terms and conditions of a one-year period of probation. On appeal, Yost claims that the trial court erred in overruling his motion to suppress.

*Relevant Facts and Procedural History*

{¶2} On March 4, 2017, Trooper Jason Fowler was travelling eastbound on U.S. 224 in Seneca County, at approximately 3:00 a.m., when he observed Yost's vehicle travel over the white fog line while driving westbound on the same road. Trooper Fowler determined that Yost had committed a marked lanes violation and conducted a traffic stop of Yost's vehicle.

{¶3} Upon encountering Yost in his vehicle, Trooper Fowler noticed a strong odor of marijuana and a moderate odor of alcoholic beverage emitting from the vehicle. Trooper Fowler placed Yost in the front seat of his patrol cruiser, performed a search of Yost's vehicle, and found a cigarillo in the center console, but no other contraband or alcoholic beverage. He noticed that Yost had slow movement, and bloodshot, red, glossy eyes. He also observed raised taste buds and

a green tint on the back of Yost's tongue. Trooper Fowler detected a strong odor of marijuana emitting from Yost's person while he was seated in the patrol cruiser.

{¶4} Trooper Fowler performed the Horizontal Gaze Nystagmus ("HGN") field sobriety test on Yost, and observed six out of six possible clues indicating impairment. He also noticed that Vertical Gaze Nystagmus ("VGN") was present in each eye during testing. He had Yost complete a number of other field sobriety tests, which included the walk-and-turn, the one-leg stand, lack of convergence eye test, a recitation of the alphabet from letter C to X, and counting down from numbers 57 to 42, all of which Yost performed satisfactorily. Trooper Fowler made the determination to arrest Yost for driving a vehicle while impaired. Trooper Fowler offered Yost a breath test, which Yost refused. He transported Yost to the Tiffin Police Department and obtained a search warrant to draw Yost's blood.

{¶5} On March 6, 2017, Trooper Fowler filed a complaint alleging that Yost committed the offense of OVI, in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree, and a marked lanes violation, in violation of R.C. 4511.33, a minor misdemeanor. Yost appeared, *pro se*, for arraignment on March 15, 2017, where he entered a plea of not guilty.

{¶6} On April 27, 2017, the prosecution filed a motion to dismiss the OVI based upon the blood test results revealing that Yost was under the legal limit for driving under the influence of alcoholic beverage.

{¶7} On May 26, 2017, the trial court held a hearing on the State's motion to dismiss, where Yost appeared *pro se*. The trial court overruled the motion, noting that the OVI charge could proceed because "there's lots of ways you can be impaired. All right. It's not just booze" and set the case for trial. (Doc. No. 58 at 3).

{¶8} On June 15, 2017, Yost retained counsel who filed a notice of appearance, a motion for new trial date, and a request for leave to file a motion to suppress. The trial court granted a continuance and permitted Yost to file a motion to suppress.

{¶9} On August 4, 2017, Yost filed a "Motion to Suppress/Limine," arguing that this arrest was unlawful on several grounds, and requesting that the trial court suppress the evidence obtained as result of the arrest. Specifically, Yost maintained, *inter alia*, that Trooper Fowler lacked reasonable, articulable suspicion to initiate the traffic stop, failed to perform the NHTSA standard field sobriety testing in substantial compliance pursuant to R.C. 4511.19(D)(4), and lacked probable cause to arrest him.

{¶10} On September 26, 2017, the trial court held a hearing on Yost's motion to suppress. Trooper Fowler presented testimony for the prosecution and a video recording of the stop and arrest made from Trooper Fowler's cruiser camera was admitted as evidence at the hearing. At the close of the evidence, the trial court

overruled the motion to suppress finding that Trooper Fowler had reasonable, articulable suspicion to make the traffic stop of Yost's vehicle based upon a marked lanes violation, that Trooper Fowler administered the HGN test in substantial compliance with the NHTSA standards, and that Trooper Fowler had probable cause to arrest Yost for OVI.

{¶11} On December 4, 2017, Yost entered a plea of no contest to the charges and the trial court sentenced him to 90 days in jail, all suspended upon his compliance with the terms and conditions of his one-year period of probation. The trial court also imposed a $375.00 fine, plus court costs, with a one-year license suspension.

{¶12} Yost filed this appeal, asserting the following assignments of error.

**ASSIGNMENT OF ERROR NO. 1**

**THE COURT DENIED APPELLANT'S MOTION TO SUPPRESS THE HGN DESPITE THE STATE'S FAILURE TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT THE STATE CONDUCTED THE HGN TEST IN SUBSTANTIAL COMPLIANCE WITH NHTSA STANDARDS.**

**ASSIGNMENT OF ERROR NO. 2**

**THE STATE LACKED PROBABLE CAUSE TO ARREST APPELLANT.**

{¶13} For ease of discussion, we elect to address the assignments of error out of order.

Case No. 13-18-03

*Second Assignment of Error*

**{¶14}** In his second assignment of error, Yost claims that Trooper Fowler lacked reasonable, articulable suspicion of a traffic infraction to stop Yost's vehicle. Specifically, Yost argues that the facts in the instant case are identical to the facts in *State v. Shaffer*, where we found that a one-time touching of the white line by the tire for approximately three seconds, with no evidence concerning the circumstances of the defendant's failure to stay in the lane did not constitute reasonable, articulable suspicion to stop the vehicle for a violation of R.C. 4511.33. *Shaffer*, 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581.

*Standard of Review*

**{¶15}** A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must

independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*Relevant Authority*

{¶16} The Supreme Court of Ohio has defined "reasonable articulable suspicion" as "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion [upon an individual's freedom of movement]." *State v. Bobo*, 37 Ohio St.3d 177, 178 (1988), quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). "The 'reasonable and articulable suspicion' analysis is based on the collection of factors, not on the individual factors themselves." *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 12, quoting *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 11. "A traffic stop is constitutionally valid when a law-enforcement officer witnesses a motorist drift over the lane markings in violation of R.C. 4511.33, even without further evidence of erratic or unsafe driving." *Mays* at syllabus.

{¶17} Yost was convicted of a driving his vehicle outside the marked lanes, in violation of R.C. 4511.33, which states:

> **(A)  Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:**
>
> > **(1)   A vehicle or trackless trolley shall be driven, *as nearly as is practicable*, entirely within a single lane or line of traffic**

**and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.**

(Emphasis added).

{¶18} In *Shaffer*, *supra*, we concluded that the record did not support a reasonable, articulable suspicion to justify the traffic stop of Shaffer based on a marked-lanes violation under the language of R.C. 4511.33(A)(1). This is because the testimony of the officer established only that the tires of Shaffer's vehicle touched the white fog line without any additional testimony or additional evidence as to whether or not it was "practicable" for Shaffer to remain in her lane of travel, or whether she may have been compelled to travel outside her lane for safety purposes. *Id*. at ¶ 26. It is this latter testimony or evidence as to the "practicability" of the remaining in the lane of travel that we held in *Shaffer* is necessary; in addition to evidence of merely touching the white fog line, in order to establish probable cause of a violation of R.C. 4511.33(A)(1). In other words, we simply held in *Shaffer* that the language of R.C. 4511.33(A)(1) contains a two prong test for a marked-lane violation. In making that finding, we reasoned as follows.

**In drafting the foregoing subsection [R.C. 4511.33](A)(1), the legislature specifically chose the phase "as nearly as is practicable" in describing a motorist's duty to drive within a single lane or line of traffic. We believe the language "as nearly as is practicable" inherently contemplates some inevitable and incidental touching of the lane lines by a motorist's vehicle during routine and lawful driving, without the vehicle being considered to have left the lane of travel so as to constitute a marked lanes**

**violation as proscribed by R.C. 4511.33(A)(1), such as to avoid debris, obstructions or imperfections in the roadway.**

**In the alternative, the same subsection notably does not proscribe all movement from the marked lane but expressly links any movement from the marked lane directly with the element of safety—specifically permitting movement from the lane only where "the driver has first ascertained that such movement can be made with safety."**

**Accordingly, it is our conclusion that consideration of the statutory factors of practicability and safety is integral to any determination of a violation of R.C. 4511.33(A)(1).**

{¶19} Moreover, in *Shaffer*, we went on to discuss the nature of the evidence in the record that could be sufficient to address the element of practicability set forth in the statute:

*Shaffer*, 2013-Ohio-3581 at ¶¶ 21-23.

**We would be inclined to agree that a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1) could be established by almost any evidence in the record addressing either the practicability or the safety of the driving circumstances. This conclusion stems in part from the fact that a sudden deviation from the lane of travel, where there is nothing in the surrounding circumstances to indicate why it was not practicable for the driver to remain within the lane, could in itself raise a legitimate safety concern sufficient to constitute a reasonable, articulable suspicion of a violation of R.C. 4511.33(A)(1) in the right case. * * ***

{¶20} Based on the foregoing analysis, we concluded in *Shaffer* that:

**However, the fact remains that in this case there is *no evidence* in the record from which any legitimate inference can be drawn regarding either one of these requisite statutory elements. As noted earlier, the only evidence presented to the trial court was Trooper Sisco's testimony that there was a one-time touching of**

> **Shaffer's tires on the white fog line, causing a slight extension of the right fender and mirror of the vehicle over the line for approximately three seconds. There was no other evidence concerning the circumstances surrounding Shaffer's failure to maintain her lane of travel.**
>
> **More specifically, there was nothing in Trooper Sisco's testimony as to the traffic, weather or road conditions, or anything else in the record to indicate either 1) that there was no apparent reason why it was not practicable for Shaffer to remain within the lane, or 2) that in this instance, Shaffer's single and brief movement from the lane otherwise presented any apparent issue of safety. Accordingly, *without some additional evidence* in the record regarding the surrounding circumstances, traffic and road conditions going to the express statutory language regarding either practicability or safety, we cannot conclude that the act of Shaffer driving onto the white fog line one time for a matter of three seconds is alone sufficient to establish the requisite reasonable and articulable suspicion to stop Shaffer for a violation of R.C. 4511.33(A)(1).**

*Shaffer*, 2013-Ohio-3581 at ¶¶ 24-27 (emphasis added)**.**

*Analysis*

**{¶21}** At the hearing on the suppression motion, Trooper Fowler testified that he was travelling towards Yost's vehicle, which was moving in the opposite direction, at approximately 3:00 a.m., when he observed Yost drive outside of his lane. Specifically, Trooper Fowler testified that he was watching Yost's vehicle as it approached "and as soon as it passed, coming towards me, it went off the, the right side of the road just a little over the fog line. And I heard the rumble strips going as he passed me. And that's what got my attention." (Doc. No. 59 at 11).

**{¶22}** As in *Shaffer*, in this case, there was no *testimony* elicited from Trooper Fowler at the suppression hearing concerning the circumstances surrounding Yost's failure to maintain his lane of travel—i.e., traffic, weather or road conditions, where the rumble strips were located in relation to the marked lane, or anything else to indicate why it was not practicable for Yost to remain within the lane as contemplated by the statute.

**{¶23}** However, in this case there was also a video recording made from Trooper Fowler's cruiser camera depicting the entire approach of Yost's vehicle, weather, traffic, road conditions, and the circumstances giving rise to the stop. Our review of that video recording, which was introduced into evidence, clearly constitutes "evidence in the record from which [a] legitimate inference can be drawn" that there was no apparent reason why it was impracticable for Yost to remain his lane pursuant to the standard set forth in *Shaffer*. *See Shaffer* at ¶¶ 26-27.

**{¶24}** Accordingly, we do not find error in the trial court's consideration of all the evidence in the record including the video and the resulting conclusion that Trooper Fowler's traffic stop of Yost's vehicle for a marked lanes violation was valid under R.C. 4533.11(A)(1). Therefore, we overrule Yost's second assignment of error.

*First Assignment of Error*

**{¶25}** In his first assignment of error, Yost argues that the trial court erred in overruling his motion to suppress based upon its finding that Trooper Fowler substantially complied with NHTSA standards when he performed the HGN test on Yost and found that six out of six clues of impairment were indicated. Specifically, Yost argues that the video evidence of Trooper Fowler's stop and arrest of Yost demonstrates that Trooper Fowler failed to substantially comply with the applicable standards.

*Relevant Authority*

**{¶26}** In *State v. Boczar*, the Supreme Court of Ohio held, "... HGN test results are admissible in Ohio without expert testimony so long as the proper foundation has been shown both as to the administering officer's training and ability to administer the test and as to the actual technique used by the officer in administering the test." 113 Ohio St.3d 148, 2007-Ohio-1251, ¶ 27. Moreover, R.C. 4511.19(D)(4)(b) provides that the results of a field sobriety test are admissible:

> **\* \* \* if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration \* \* \*.**

{¶27} Further, the Supreme Court of Ohio has made clear that the officer may testify regarding observations made during a defendant's performance of standardized field sobriety tests even absent proof of "strict compliance." *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 15.

*Analysis*

{¶28} Here, Trooper Fowler testified that upon approaching Yost's vehicle he detected a "strong odor of marijuana in the vehicle." (Doc. No. 59 at 14). Trooper Fowler also observed Yost to have "slow movement," and "bloodshot, red, glossy eyes." He asked Yost if he had smoked any marijuana, to which Yost replied no. Trooper Fowler testified that he placed Yost in his cruiser and conducted the HGN test in accordance with the NHTSA training he received, and that in the course thereof he looked for six clues of intoxication, namely lack of smooth pursuit, distinct nystagmus at maximum deviation, and onset of nystagmus prior to forty-five degrees in each eye. Trooper Fowler stated that he observed all six clues during the test indicating impairment. Trooper Fowler testified that he also conducted a Vertical Gaze Nystagmus test, and observed testified vertical nystagmus in both of Yost's eyes.

{¶29} While conducting the field sobriety tests, Trooper Fowler continued to detect an odor of alcoholic beverage and marijuana on Yost's person. He checked Yost's mouth and noticed "raised taste buds on the back of [Yost's] tongue and "a

green tint on the back of his tongue as well." Trooper Fowler testified that based on his training these are signs "that [Yost had] been smoking marijuana." (Doc. No. 59 at 19, 22).

**{¶30}** On appeal, Yost claims that Trooper Fowler failed to substantially comply with NHTSA standards. Specifically, Yost contends that HGN and VGN tests should take a minimum of eighty-four seconds according to the standards, and the video recording in this case demonstrates that Troop Fowler only took sixty seconds to complete the tests. At the outset, we note the timing required to complete the various elements with respect to both eyes of the HGN test as set forth in the NHTSA manual are approximate. *State v. Lominack*, *III*, 5th Dist. Stark No.2012CA00213, 2013-Ohio-2678, ¶ 31. Furthermore, we have rejected a similar argument that a law enforcement officer failed to substantially comply with the applicable standards based upon an assertion that the HGN test must be performed in a specific number of seconds. *See State v. Fittro*, 3d Dist. Marion No. 9-14-19, 2015-Ohio-1884, ¶ 15.

**{¶31}** Nevertheless, despite Yost's contentions on appeal, a review of the video recording is inconclusive as to whether Trooper Fowler substantially complied with NHTSA standards due to the fact that only the audio is captured on the recording, and the manner in which Trooper Fowler conducted the HGN test is not able to be observed.

{¶32} However, while field sobriety tests must be administered in substantial compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered. *State v. Homan*, 89 Ohio St.3d 421 (2000), superseded by statute on other grounds as stated in *State v. Boczar*, *supra*.

{¶33} In the case at bar, the probable cause to arrest Yost for OVI was supported by Trooper Fowler's observations of slow movement, red, bloodshot, glassy eyes, an odor of alcoholic beverage and marijuana, raised taste buds and green coating of Yost's tongue, and a marked lanes traffic violation. Thus, Trooper Fowler's testimony in this respect was admissible for purposes of establishing whether he had probable cause to arrest Yost for OVI. As such, we overrule the first assignment of error.

{¶34} Accordingly, for all these reasons, the assignments of error are overruled and the judgment is affirmed.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**