[Cite as *State v. Parsons*, 2019-Ohio-3140.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                 CASE NO. 2-19-02

      v.

THOMAS M. PARSONS,                 O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Auglaize County Municipal Court
Trial Court No. 2018 TRC 05803

Judgment Affirmed

Date of Decision: August 5, 2019

APPEARANCES:

    *Kenneth J. Rexford* for Appellant

    *Laia D. Zink* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Thomas M. Parsons ("Parsons"), appeals the December 11, 2018 judgment entry of the Auglaize County Municipal Court convicting him of operating a motor vehicle while under the influence of alcohol or drugs of abuse ("OVI") and a marked-lanes violation after his motion to suppress evidence was denied. We affirm.

{¶2} On July 20, 2018, at approximately 11:54 p.m., Ohio State Highway Patrol Trooper Z. Deitering ("Trooper Deitering") initiated a traffic stop of the vehicle operated by Parsons after Trooper Deitering observed Parsons commit marked-lanes violations while travelling on State Route 198 in Auglaize County, Ohio. (Oct. 9, 2018 Tr. at 3). After determining that Parsons had a blood-alcohol concentration of .142 grams by weight of alcohol per two hundred ten liters of his breath, he was arrested and charged with OVI in violation of R.C. 4511.19(A)(1)(a) and (d), first-degree misdemeanors, and the failure to drive within the marked lanes in violation of R.C. 4511.33, a minor misdemeanor. (Doc. No. 1).

{¶3} On July 25, 2018, Parsons appeared and entered pleas of not guilty. (Doc. No. 10). On August 30, 2018, Parsons filed a motion to suppress evidence arguing that Trooper Deitering lacked a reasonable, articulable suspicion to believe that he committed a marked-lanes violation. (Doc. No. 21). After a hearing on October 9, 2018, the State filed a memorandum in opposition to Parsons's motion

to suppress evidence on October 12, 2018. (Doc. No. 34).[1] On October 17, 2018, Parsons filed a response to the State's memorandum in opposition to his motion to suppress. (Doc. No. 35). On December 11, 2018, the trial court denied Parsons's motion to suppress evidence after finding Trooper Deitering's testimony that he observed the vehicle operated by Parsons "drift over the white edge line on one occasion" to be credible. (Doc. No. 36).

{¶4} On January 8, 2019, a change-of-plea hearing was held in the trial court. (Doc. No. 37). Pursuant to a negotiated plea agreement, Parsons withdrew his pleas of not guilty and entered no-contest pleas to the OVI charge under R.C. 4511.19(A)(1)(d) and the marked-lanes charge. (*Id.*). The trial court accepted Parsons's no-contest pleas, found him guilty, and dismissed the OVI charge under R.C. 4511.19(A)(1)(a). (*Id.*). The trial court sentenced Parsons to three years of community-control sanctions, including 180 days in jail, with 170 days suspended conditioned on his compliance with his community-control sanctions. (*Id.*). The trial court further imposed a $525 fine and a two-year license suspension. (*Id.*).

{¶5} Parsons filed his notice of appeal on January 31, 2019 and raises one assignment of error for our review. (Doc. No. 50).

---

[1] The trial court permitted the State to file its memorandum in opposition to Parsons's motion to suppress after the suppression hearing. (Oct. 9, 2018 Tr. at 14-15). The trial court also permitted Parsons's time to file a response to the State memorandum in opposition to his motion to suppress. (*Id.*).

**Assignment of Error**

**The Trial Court Erred by Denying Mr. Parsons' Motion to Suppress, In Violation of His Rights Under the Ohio and United States Constitutions.**

{¶6} In his sole assignment of error, Parsons argues that the trial court erred by denying his motion to suppress evidence. In particular, he argues that the trial court erred by concluding that Trooper Deitering had a reasonable, articulable suspicion to believe that he committed a marked-lanes violation.

*Standard of Review*

{¶7} A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id. See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*Analysis*

**{¶8}** "[I]n order to constitutionally stop a vehicle, an officer must, at a minimum, have either: (1) a reasonable suspicion, supported by specific and articulable facts, that criminal behavior has occurred, is occurring, or is imminent; or (2) a reasonable suspicion, supported by specific and articulable facts, that the vehicle should be stopped in the interests of public safety." *State v. Anthony*, 3d Dist. Seneca No. 13-09-26, 2009-Ohio-6717, ¶ 10, citing *State v. Moore*, 3d Dist. Marion No. 9-07-60, 2008-Ohio-2407, ¶ 10, citing *State v. Andrews*, 3d Dist. Auglaize No. 2-07-30, 2008-Ohio-625, ¶ 8, citing *State v. Chatton*, 11 Ohio St.3d 59, 61 (1984), and citing *State v. Purtee*, 3d Dist. Logan No. 8-04-10, 2006-Ohio-6337, ¶ 9, citing *State v. Norman*, 136 Ohio App.3d 46, 53-54 (3d Dist.1999).

**{¶9}** "An officer's 'reasonable suspicion' is determined based on the totality of the circumstances." *Id.* at ¶ 11, citing *Moore* at ¶ 11, citing *Andrews* at ¶ 8, citing *State v. Terry*, 130 Ohio App.3d 253, 257 (3d Dist.1998), citing *State v. Andrews*, 57 Ohio St.3d 86, 87 (1991). "'"Specific and articulable facts" that will justify an investigatory stop by way of reasonable suspicion include: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances.'" *Id.*, quoting *Purtee* at ¶ 9, citing *State v. Gaylord*, 9th Dist. Summit No. 22406, 2005-Ohio-2138, ¶ 9, citing

*State v. Bobo*, 37 Ohio St.3d 177, 178-179 (1988), and citing *State v. Davison*, 9th

Dist. Summit No. 21825, 2004-Ohio-3251, ¶ 6.

**{¶10}** In this case, Trooper Deitering stopped Parsons for violating R.C.

4511.33, which provides, in its relevant part, as follows:

> (A) Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
>
> (1) A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety.

R.C. 4511.33(A)(1). "'[A] traffic stop is constitutionally valid when a law-

enforcement officer witnesses a motorist drift over the lane markings in violation of

R.C. 4511.33, even without further evidence of erratic or unsafe driving.'" *Anthony*

at ¶ 12, quoting *State v. Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, ¶ 25.

**{¶11}** On appeal, Parsons argues that the trial court's credibility

determination regarding Trooper Deitering is not supported by competent, credible

evidence. In particular, he contends that the trial court improperly relied on Trooper

Deitering's testimony that he observed Parsons "drift over the white edge line on

one occasion" because the dashboard-camera recording does not reflect any

evidence "in the way of weaving or crossing lines." (Doc. No. 36); (Appellant's

Brief at 13). Stated another way, Parsons argues that Trooper Deitering's credibility

is impeached by the dashboard-camera recording because (as Parsons contends) such recording is inconsistent with Trooper Deitering's testimony. Furthermore, (absent Trooper Deitering's testimony) Parsons argues that the dashboard-camera recording does not support that Trooper Deitering had a reasonable, articulable suspicion to believe that Parsons committed a marked-lanes violation to justify the traffic stop. Specifically, he argues that

> the cruiser video shows nothing in the way of weaving or crossing the lines. At best, it is possible at a single brief point that a very minimal single touching of the white fog line on the right edge of the lane or [sic] travel perhaps occurred * * *.

(Appellant's Brief at 13). Relying on this court's decision in *State v. Shaffer*, Parsons contends there is no competent, credible evidence supporting the trial court's conclusion that he committed a marked-lanes violation. 3d Dist. Paulding No. 11-13-02, 2013-Ohio-3581.

{¶12} Parsons's arguments are misplaced on both accounts. It is widely understood that credibility determinations are squarely within the province of the trial court. *See State v. Dukes*, 4th Dist. Scioto No. 16CA3745, 2017-Ohio-7204, ¶ 39; *State v. Smith*, 7th Dist. Belmont No. 15 BE 0064, 2017-Ohio-2708, ¶ 49. Contrary to Parsons's argument on appeal, Trooper Deitering's credibility is *not* belied by the dashboard-camera recording. That is, this is not a case in which the dashboard camera directly contradicts a witness's testimony. Rather, at the

suppression hearing, Trooper Deitering testified that he stopped Parsons after observing the following:

> As soon as I turned onto [State Route] 198 I noticed the vehicle go over the white fog line off to the right side of the road. I continued to follow the vehicle northbound noticing it serving within its lane, and eventually I [activated] my overhead lights * * *."

(Oct. 9, 2018 Tr. at 3). He further clarified that he "noticed" Parsons "travel over the white fog line" and witnessed Parsons "swerving within [his] lane," and "noticed a couple of times he touched the white fog line, * * * then * * * go toward the left of center of the road." (*Id.* at 5). Trooper Deitering also indicated that he did not "see anything on the roadway that was unsafe or that would cause [Parsons] to leave the roadway." (*Id.* at 12).

{¶13} The trial court admitted into evidence the recording from Trooper Deitering's dashboard camera. (*Id.* at 4, 12-13); (State's Ex. 1).[2] However, before the recording was played for the trial court, Trooper Deitering testified that the dashboard camera did not capture the initial marked-lanes violation that he observed. (Oct. 9, 2018 Tr. at 5, 12). That is, Trooper Deitering testified that the "look back period" of his dashboard camera is one minute and the initial marked-lanes violation occurred prior to the one-minute-look-back period. (*Id.* at 4, 12). Nevertheless, the balance of Trooper Deitering's observations are supported by the

---

[2] Parsons stipulated to State's Exhibit 1. (Oct. 9, 2018 Tr. at 12-13).

dashboard-camera recording. Accordingly, we conclude that the trial court's credibility determination regarding Trooper Deitering is supported by competent, credible evidence.

**{¶14}** Moreover, because the trial court's credibility determination is supported by competent, credible evidence, the trial court's ultimate conclusion—that Trooper Deitering had a reasonable, articulable suspicion to believe Parsons committed a marked-lanes violation—is based on competent, credible evidence. Specifically, Trooper Deitering testified that he witnessed Parsons cross the white fog line without a practicable reason to deviate from his lane of travel. *See Williamson v. Bur. of Motor Vehicles*, 3d Dist. Defiance No. 4-17-06, 2017-Ohio-7363, ¶ 14, citing *Anthony*, 2009-Ohio-6717, at ¶ 12, quoting *Mays*, 119 Ohio St.3d 406, 2008-Ohio-4539, at ¶ 25.

**{¶15}** As to Parsons's secondary argument (that the dashboard-camera recording is not competent, credible evidence that Parsons committed a marked-lanes violation based on this court's decision in *Shaffer*), we determine such argument to be without merit. In *Shaffer*, we concluded that the evidence in the record did not support a reasonable, articulable suspicion to justify the traffic stop of Shaffer based on a marked-lanes violation where the tires of Shaffer's vehicle were on the white fog line *without* evidence that it was not practicable for Shaffer to remain in her lane of travel or evidence that she travelled outside her lane for

safety purposes. *Shaffer*, 2013-Ohio-3581, at ¶ 26. Accordingly, foregoing Trooper Deitering's initial observation of Parsons crossing the white fog line, there is competent, credible evidence in the record that Parsons committed a marked-lanes violation. That is, the evidence reflecting that Parsons's driving caused his vehicle to weave within the lane, touching the white fog line (which Parsons admits), together with the evidence that there was no condition making it impractical for him to remain in the lane (as discussed in *Shaffer*), supports a reasonable, articulable suspicion to justify a traffic stop.

{¶16} For these reasons, Parsons's assignment of error is overruled.

{¶17} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and WILLAMOWSKI, J.J., concur.**

**/jlr**